UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-14228-MIDDLEBROOKS

NATALIO AGUIRRE, ADRIAN DELGADO,
ROGELIO NUNEZ, JOSE A. SANCHEZ,

      Plaintiff,

v.

SOUTH FLORIDA GRADING, INC., a
Florida for-profit corporation, and
TIMOTHY O. REYNOLDS,

      Defendants.
_____/

## MOTION TO ENFORCE SETTLEMENT AGREEMENT, MOTION FOR ATTORNEYS' FEES AND COSTS, MEMORANDUM OF LAW, AND CERTIFICATE OF GOOD FAITH

The Plaintiffs, JOSE A. SANCHEZ ("Sanchez") and ADRIAN DELGADO ("Delgado"), files this Motion to Enforce Settlement, Motion for Attorneys' Fees, Memorandum of Law, and Certificate of Good Faith, and states as follows:

### Summary of Argument

This case arose under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages. The four Plaintiffs and the two Defendants settled the case, and after filing submitting the settlement to the Court for approval, the Court entered an Order Granting Approval of Settlement and Dismissing Case (DE 26). Therein, the Court agreed to retain jurisdiction to enforce the settlement until *today*, April 29, 2019. See Order (DE 26) at ¶5.

Under the terms of the Parties' settlement, the Defendants had certain payment obligations. Among other things, the Defendants were to pay wages to Plaintiffs Sanchez and Delgado, *and issue them each, W-2 tax form*. See Settlement Agreements at ¶¶3(A)(a), attached

hereto as **Exhibits 1 and 2**.

To date, the Defendants have failed to issue W-2's to Plaintiffs Sanchez and Delgado, which has thrown a monkey wrench into their ability to properly file their taxes with the Internal Revenue Service. Of course, prior to bringing the instant Motion, Sanchez and Delgado, made numerous attempts to obtain the subject W-2's without court intervention. For example, Sanchez called the Defendants on behalf of himself and Delgado, however, the Defendants' agents told him the tax forms would be furnished at some unspecified point in the future—two to three months from the present. Undersigned counsel's office also attempted to obtain the subject W-2 tax forms by contacting the defense counsel on March 28, 2019, April 5, 2019 and April 15, 2019. The undersigned even offered to have the tax forms sent to him, and then he would take the initiative to get them to Sanchez and Delgado. Despite all of these efforts, the W-2 tax forms have not been provided, the defense counsel were unable to shed any light on the whereabouts of the W-2's, and therefore, the Defendants are in breach of their payment obligations.

## Memorandum of Law

The construction and enforcement of settlement agreements are governed by general principals of state contract law. Wong v. Bailey, 752 F.2d 619, 621 (11th Cir. 1985). Federal district courts have inherent power to summarily enforce settlement agreements entered into by party litigants in a pending case. Kent v. Baker, III, 815 F.2d 1395, 1398 (11th Cir.1987). Here, the Court has retained jurisdiction to enforce the terms of the Settlement Agreement. *See* Order Granting Approval of Settlement and Dismissing Case (DE 26).

The W-2 tax form *should* have been provided by the Defendants to the Plaintiffs by not later than **January 31, 2019**. 26 C.F.R. §31.6051-1 ("Statements for Employees"). Indeed,

"[e]ach statement required by this section for a calendar year . . . shall be furnished to the employee on or before January 31, of the year succeeding such calendar year." *Id.* As the subject FLSA settlement was approved by the Court on October 30, 2018 (DE 26), the Defendants have had nearly six months to provide the W-2 tax forms, but have not done so. Moreover, as stated, even after Sanchez contacted the Defendant corporation on behalf of himself and Delgado, the Defendants could not provide a straight answer what when the subject forms would be received, not to mention that the statutory deadline to provide the tax forms was *January 31, 2019*—nearly 2.5 months ago.

The Settlement Agreement requires the Defendants to pay the attorneys' fees for the Plaintiffs having to file this Motion. The Settlement Agreement states "The Plaintiff shall be entitled to his attorneys' fees and costs should be required to enforce the Defendants' payment obligations under this Agreement." *See* Settlement Agreements at ¶10, attached hereto as **Exhibits 1 and 2**. Here, delivery of a W-2 to Plaintiffs Sanchez and Delgado was part of the Defendants' payment obligations as specifically identified in the Agreements. *See* Settlement Agreements at ¶¶3(A)(a). The Plaintiff's attorneys' fees in preparing this Motion are $480.00 (1.2 hours x $400.00 hourly rate = $480.00). $400.00 is a reasonable hourly rate for an attorney with the undersigned's experience.[1] *Id.* $480.00 does include the approximate 0.4 hours going-back-and-forth with the defense counsel about timely obtaining the W-2's, nor undersigned's time conferring with Sanchez and Delgado about same.

WHEREFORE, Plaintiff Sanchez and Delgado request that Court (a), enforce the

---

[1] Plaintiff's counsel was previously awarded an hourly rate of $400.00 per hour. *See Mursell v. Ocean's 13 Sports Bar & Grill et al., Case 18-60679-Cooke (Report & Recommendation* by Magistrate Judge Hunt dated 8/14/2018 (DE 45) (billing records utilizing $400.00 lodestar rate at DE 47). Undersigned counsel has been practicing law since 1997, and is a graduate of the University of Pennsylvania Law School, where he served as Senior Editor of the *University of Pennsylvania Law Review*. The majority of the Plaintiff counsel's practice is devoted to wage & hour

Settlement Agreement in their favor by granting this Motion, (b) ordering Defendants to provide the W-2's to undersigned counsel within five (5) days, (c) award Plaintiff additional attorneys' fees that may be incurred should he be required to file a Reply or addressing enforcement matters, (d) continue to retain jurisdiction to enforce the terms of Settlement, and, (e) grant the Plaintiff all relief deemed appropriate by the Court.

Respectfully submitted,

/s Peter Bober
PETER J. BOBER
Florida Bar Number 0122955
BOBER & BOBER, P.A.
2699 Stirling Road, Suite A-304
Hollywood, FL 33312
(954) 922-2298 (tel.)
(954) 922-5455 (facsimile)
peter@boberlaw.com

## CERTIFICATE OF GOOD FAITH

As set forth herein, I hereby certify that a good faith effort was made to resolve the payment issue without court intervention. Despite contacting Defendants' counsel numerous times (by email, and also by telephone), and after multiple discussions by email, the Defendants have failed to provide the subject W-2 tax forms.

/s Peter Bober

---

cases.

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s Peter  Bober

## SERVICE LIST

Adam P. Handfinger, Esq.
Co-Managing Partner
Peckar & Abramson, P.C.
One S.E. Third Avenue
 Suite 3100
Miami, Florida 33131
office 305.358.2600
ahandfinger@pecklaw.com
(served *via* CM/ECF on April 29, 2019)

# EXHIBIT 1
# (Jose Sanchez Settlement Agreement)

# SETTLEMENT AGREEMENT AND RELEASE

1. This Agreement covers all understandings between Jose Sanchez (hereinafter referred to as "Plaintiff"), and South Florida Grading, Inc. and Timothy Reynolds (hereinafter, jointly and severally, "the Defendants).

2. For and in consideration of the promises outlined in Paragraph 3 of this Agreement, Plaintiff agrees as follows:

A. For and in consideration of the required acts and promises set forth in the text of this Agreement, Plaintiff hereby knowingly and voluntarily releases and discharges Defendants, from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Plaintiff has or might have as a result of, or in any way connected to or related to with Plaintiff's employment or separation of employment with Defendants, including but not limited to Case 18-14228-Middlebrooks (S.D.Fla.) (hereinafter, the "Lawsuit"), or claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, Florida Statutes Section 440.205, and all other local, state or federal laws including but not limited to these relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, wage claims, including but not limited to claims for bonuses, severance, vacation and overtime, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, other than claims for unemployment compensation or for worker's compensation injuries (none of which exist at the current time), which Plaintiff has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

The foregoing is not a complete list, and Plaintiff waives and releases all similar rights and claims under all other federal, state and local discrimination provisions and all other statutory and common law causes of action relating in any way to Plaintiff's employment or separation from his employment with Defendants, or otherwise, and whether such claims are now known

1

JS

or unknown to Plaintiff, from the beginning of the world to the effective date of this Agreement.

B. Plaintiff agrees that he will henceforth keep this Agreement, the terms of this Agreement, confidential. If inquiries arise concerning this Agreement, Plaintiff may reply "no comment." The only exceptions to the restrictions set forth in this paragraph shall be a disclosure to his spouse, attorneys, tax preparers, accountants, or as required to lawfully pay taxes.

C. The Plaintiff agrees that he will not make statements, that are negative, disparaging or derogatory regarding Defendants.

3. For and in consideration of the promises outlined in this Agreement, Defendants agree as follows:

A. Defendants will pay Plaintiff and his counsel the gross sum of $27,037.68. (the "Settlement Sum"). This amount will be delivered in two (2) checks to counsel for Plaintiff's office at Bober & Bober, P.A., 1930 Tyler Street, Hollywood, FL 33020, by not later than November 1, 2018, as follows:

a. Check # 1 to Jose Sanchez for $10,081.34 (constituting gross wages for which Defendants will issue a W-2);
b. Check # 2 to "Bober & Bober, P.A. Trust Account" for $16,956.34 (comprised of $1,875.00 in lodestar attorneys' fees and costs; plus $10,081.34 as liquidated damages; and, $5,000.00 as consideration for Plaintiff's claim under 26 U.S.C. §7434). Defendants will issue a Form 1099 in connection with this Check # 2.

Counsel for Plaintiff will hold the settlement checks in trust and will not disburse the same until the Court approves this settlement agreement and enters the applicable order of dismissal.

Time is of the essence. Should Defendants fail to timely pay the Settlement Sum, then Plaintiff shall provide notice to Defendants' counsel, Fernando Langa at FLanga@pecklaw.com). The Defendants shall have three (3) days to cure the payment default by delivering said funds to Plaintiff's counsel's office. If Defendants do not cure the default within three (3) days of the notice of default, then Plaintiff shall be entitled to apply for file in any action or proceeding, an Unopposed Motion for Self-Executing Final Judgment in the amount of $32,468.48 less any amounts paid by Defendants hereunder.

B. Defendants agree that in consideration of Plaintiff entering into this Agreement, and for the other consideration herein, they release Plaintiff from any and all damages, complaints, claims, charges, actions and causes of action of any kind or nature that they once had or now have, whether arising out of Plaintiff's employment or otherwise, and whether such claims are now known or unknown to the Defendants from the beginning of the world to the date of these presents. Through this Agreement, the Defendants provide a General Release in favor of Plaintiff.

2

JS

    C.    The Defendants agree that they will not make statement that are negative, disparaging or derogatory regarding the Plaintiff to anyone including, but not limited to prospective employers of Plaintiff. Should the Defendants be contacted by a prospective employer of the Plaintiff, they shall reveal only the dates of the Plaintiff's employment and position held, and shall be prohibited from disclosing that the Plaintiff brought legal claims against the Defendants.

    D.    Defendants agree that they will henceforth keep this Agreement, the terms and conditions of this Agreement, confidential. If inquiries arise concerning this Agreement, Defendants may reply "no comment." The only exceptions to the restrictions set forth in this paragraph shall be a disclosure required by the express terms of a court order, or disclosure made by Defendants of this Agreement to their attorneys, accountants, tax advisor, or as needed to report taxes.

4.    The Parties hereto shall have the right and remedy to institute an action(s) or proceeding(s) in any court of competent jurisdiction for injunctive relief for any such breach or threatened breach of this Agreement, in addition to any other rights and remedies available in this Agreement and in law or equity. Should it be necessary for a party to enforce the material terms of this Agreement, the prevailing party shall recover its reasonable attorneys' fees and costs from the non-prevailing party.

5.    *Confidentiality*. The parties, collectively, separately, and severally, covenant and agree that they will maintain the confidentiality of, and not to disclose, reveal, publish, disseminate, or discuss, directly or indirectly, to or with any other person or entity the existence and/or terms of this Agreement (including whether or not any amount was paid, the amount paid, or opinion(s) or information they may have with respect to this Agreement). The following disclosures are permitted in the following limited circumstances:

    (a)    The parties may disclose the terms and amount paid under this Agreement as reasonably necessary to obtain legal, tax, insurance, or accounting advice or services;

    (b)    The parties may disclose the terms of this Agreement to the extent required in any legal proceeding involving the enforcement of this Agreement or as otherwise required by legal process; and Plaintiff may disclose same to his spouse, significant other or immediate family members after explaining that they may not share this information with any other parties and instruct them to be bound by this herein paragraph and bound by all other terms and conditions of this Agreement, as a breach by his spouse, significant other or immediate family members of this Agreement shall constitute a breach by Plaintiff; and

    (c)    If asked about the disposition of the Lawsuit, the parties may respond by stating that it was "resolved."

6.    *Older Workers' Benefit Protection Act*. Plaintiff understands that, pursuant to the Older

JS

Workers Benefit Protection Act of 1990, he has been advised to consult with an attorney before signing this Agreement, had twenty-one (21) days to consider the Agreement before signing it, and may revoke the Agreement within seven (7) calendar days after signing it. Employee further understands that the Agreement will not become effective or enforceable until the seven (7) day revocation period has expired and that the payment provided in paragraph 3 of this Agreement will not be paid until such period has expired.

7. *Non-Disclosure; Promise Not to Disclose*.  Plaintiff acknowledges that he may possess privileged, confidential, or proprietary information relating to Defendants' current and former clients, suppliers, and vendors and the operations or business methods of Defendants.  Plaintiff agrees that henceforth, he will not knowingly divulge such information.

8. *Return of Company Property*. Plaintiff acknowledges that he is obligated to return all of Defendants' property which he may still have in his possession.  The Plaintiff acknowledges that as of the date this Agreement is executed by him, he no longer has property of the Company in his possession.

9. The Parties shall jointly file a Joint Motion to Approve Settlement and Dismiss Case with Prejudice after this Agreement becomes fully executed, as shown in Exhibit A.

10. As a condition of settlement, the parties agree to request the U.S. District Court retain jurisdiction over this case to enforce the Defendants' payment obligations. The Plaintiff shall be entitled to his attorneys' fees and costs should he be required to enforce the Defendants' payment obligations under this Agreement.

THE FOREGOING TERMS ARE AGREED TO AND ACCEPTED BY:

DATE: 10-26-18    Signature: _____
                             JOSE SANCHEZ

DATE:_____    Signature: _____
                             Authorized Representative for
                             SOUTH FLORIDA GRADING, INC.

DATE:_____    Signature: _____
                             TIMOTHY REYNOLDS

4

# EXHIBIT 2
# (Adrian Delgado Settlement Agreement)

# SETTLEMENT AGREEMENT AND RELEASE

1.  This Agreement covers all understandings between Adrian Delgado (hereinafter referred to as "Plaintiff"), and South Florida Grading, Inc. and Timothy Reynolds (hereinafter, jointly and severally, "the Defendants).

2.  For and in consideration of the promises outlined in Paragraph 3 of this Agreement, Plaintiff agrees as follows:

A.  For and in consideration of the required acts and promises set forth in the text of this Agreement, Plaintiff hereby knowingly and voluntarily releases and discharges Defendants, from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Plaintiff has or might have as a result of, or in any way connected to or related to with Plaintiff's employment or separation of employment with Defendants, including but not limited to Case 18-14228-Middlebrooks (S.D.Fla.) (hereinafter, the "Lawsuit"), or claims under the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 and 1871, the Americans With Disabilities Act, the Employee Retirement Income Security Act, as amended, The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Family and Medical Leave Act, the Pregnancy Discrimination Act, the Equal Pay Act of 1973, the Rehabilitation Act of 1973, the Occupational Safety and Health Act, the Immigration Reform and Control Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Florida Civil Rights Act of 1992, as amended, the Florida Whistleblower Act, Florida Statutes Section 440.205, and all other local, state or federal laws including but not limited to these relating to discrimination, denial or termination of any health benefit or benefits of any other kind, or any claims of breach or violation of public policy, any claims arising under the Federal or any state constitution, wrongful or constructive discharge, retaliatory discharge, breach of contract, wage claims, including but not limited to claims for bonuses, severance, vacation and overtime, promissory estoppel, fraud, fraudulent misrepresentation or concealment, retaliation, breach of the covenant of good faith and fair dealing, intentional and/or negligent infliction of emotional distress, outrageous conduct, interference with prospective business advantage, negligence, negligent misrepresentation or concealment, wrongful or bad faith termination, defamation and other business or personal injury, or any other claims or rights to damages, whether contractual, liquidated, compensatory, exemplary, or punitive, or rights to or claims for injunctive or equitable relief, or rights to or claims for expenses, costs, fees, attorneys' fees, and all losses of any kind whatsoever, other than claims for unemployment compensation or for worker's compensation injuries (none of which exist at the current time), which Plaintiff has or might have by virtue of any fact(s), act(s) or event(s) occurring prior to the effective date of this Agreement. All such claims, if any, are hereby compromised, settled, and extinguished in their entirety.

The foregoing is not a complete list, and Plaintiff waives and releases all similar rights and claims under all other federal, state and local discrimination provisions and all other statutory and common law causes of action relating in any way to Plaintiff's employment or separation from his employment with Defendants, or otherwise, and whether such claims are now known

1

AD

or unknown to Plaintiff, from the beginning of the world to the effective date of this Agreement.

    B.    Plaintiff agrees that he will henceforth keep this Agreement, the terms of this Agreement, confidential. If inquiries arise concerning this Agreement, Plaintiff may reply "no comment." The only exceptions to the restrictions set forth in this paragraph shall be a disclosure to his spouse, attorneys, tax preparers, accountants, or as required to lawfully pay taxes.

    C.    The Plaintiff agrees that he will not make statements, that are negative, disparaging or derogatory regarding Defendants.

3.    For and in consideration of the promises outlined in this Agreement, Defendants agree as follows:

    A.    Defendants will pay Plaintiff and his counsel the gross sum of $12,637.84. (the "Settlement Sum"). This amount will be delivered in two (2) checks to counsel for Plaintiff's office at Bober & Bober, P.A., 1930 Tyler Street, Hollywood, FL 33020, by not later than November 1, 2018, as follows:

    a. Check # 1 to Adrian Delgado for $2,881.42 (constituting gross wages for which Defendants will issue a W-2);
    b. Check # 2 to "Bober & Bober, P.A. Trust Account" for $9,756.42 (comprised of $1,875.00 in lodestar attorneys' fees and costs; plus $2,881.42 as liquidated damages; and, $5,000.00 as consideration for Plaintiff's claim under 26 U.S.C. §7434). Defendants will issue a Form 1099 in connection with this Check # 2.

Counsel for Plaintiff will hold the settlement checks in trust and will not disburse the same until the Court approves this settlement agreement and enters the applicable order of dismissal.

Time is of the essence. Should Defendants fail to timely pay the Settlement Sum, then Plaintiff shall provide notice to Defendants' counsel, Fernando Langa at FLanga@pecklaw.com). The Defendants shall have three (3) days to cure the payment default by delivering said funds to Plaintiff's counsel's office. If Defendants do not cure the default within three (3) days of the notice of default, then Plaintiff shall be entitled to apply for file in any action or proceeding, an Unopposed Motion for Self-Executing Final Judgment in the amount of $14,960.76 less any amounts paid by Defendants hereunder.

    B.    Defendants agree that in consideration of Plaintiff entering into this Agreement, and for the other consideration herein, they release Plaintiff from any and all damages, complaints, claims, charges, actions and causes of action of any kind or nature that they once had or now have, whether arising out of Plaintiff's employment or otherwise, and whether such claims are now known or unknown to the Defendants from the beginning of the world to the date of these presents. Through this Agreement, the Defendants provide a General Release in favor of Plaintiff.

2

AD

C. The Defendants agree that they will not make statement that are negative, disparaging or derogatory regarding the Plaintiff to anyone including, but not limited to prospective employers of Plaintiff. Should the Defendants be contacted by a prospective employer of the Plaintiff, they shall reveal only the dates of the Plaintiff's employment and position held, and shall be prohibited from disclosing that the Plaintiff brought legal claims against the Defendants.

D. Defendants agree that they will henceforth keep this Agreement, the terms and conditions of this Agreement, confidential. If inquiries arise concerning this Agreement, Defendants may reply "no comment." The only exceptions to the restrictions set forth in this paragraph shall be a disclosure required by the express terms of a court order, or disclosure made by Defendants of this Agreement to their attorneys, accountants, tax advisor, or as needed to report taxes.

4. The Parties hereto shall have the right and remedy to institute an action(s) or proceeding(s) in any court of competent jurisdiction for injunctive relief for any such breach or threatened breach of this Agreement, in addition to any other rights and remedies available in this Agreement and in law or equity. Should it be necessary for a party to enforce the material terms of this Agreement, the prevailing party shall recover its reasonable attorneys' fees and costs from the non-prevailing party.

5. *Confidentiality*. The parties, collectively, separately, and severally, covenant and agree that they will maintain the confidentiality of, and not to disclose, reveal, publish, disseminate, or discuss, directly or indirectly, to or with any other person or entity the existence and/or terms of this Agreement (including whether or not any amount was paid, the amount paid, or opinion(s) or information they may have with respect to this Agreement). The following disclosures are permitted in the following limited circumstances:

(a) The parties may disclose the terms and amount paid under this Agreement as reasonably necessary to obtain legal, tax, insurance, or accounting advice or services;

(b) The parties may disclose the terms of this Agreement to the extent required in any legal proceeding involving the enforcement of this Agreement or as otherwise required by legal process; and Plaintiff may disclose same to his spouse, significant other or immediate family members after explaining that they may not share this information with any other parties and instruct them to be bound by this herein paragraph and bound by all other terms and conditions of this Agreement, as a breach by his spouse, significant other or immediate family members of this Agreement shall constitute a breach by Plaintiff; and

(c) If asked about the disposition of the Lawsuit, the parties may respond by stating that it was "resolved."

6. *Older Workers' Benefit Protection Act*. Plaintiff understands that, pursuant to the Older

3

AD

Workers Benefit Protection Act of 1990, he has been advised to consult with an attorney before signing this Agreement, had twenty-one (21) days to consider the Agreement before signing it, and may revoke the Agreement within seven (7) calendar days after signing it. Employee further understands that the Agreement will not become effective or enforceable until the seven (7) day revocation period has expired and that the payment provided in paragraph 3 of this Agreement will not be paid until such period has expired.

7. *Non-Disclosure; Promise Not to Disclose.* Plaintiff acknowledges that he may possess privileged, confidential, or proprietary information relating to Defendants' current and former clients, suppliers, and vendors and the operations or business methods of Defendants. Plaintiff agrees that henceforth, he will not knowingly divulge such information.

8. *Return of Company Property.* Plaintiff acknowledges that he is obligated to return all of Defendants' property which he may still have in his possession. The Plaintiff acknowledges that as of the date this Agreement is executed by him, he no longer has property of the Company in his possession.

9. The Parties shall jointly file a Joint Motion to Approve Settlement and Dismiss Case with Prejudice after this Agreement becomes fully executed, as shown in Exhibit A.

10. As a condition of settlement, the parties agree to request the U.S. District Court retain jurisdiction over this case to enforce the Defendants' payment obligations. The Plaintiff shall be entitled to his attorneys' fees and costs should he be required to enforce the Defendants' payment obligations under this Agreement.

THE FOREGOING TERMS ARE AGREED TO AND ACCEPTED BY:

DATE: 10-26-18      Signature: _____
                              ADRIAN DELGADO


DATE: _____       Signature: _____
                              Authorized Representative for
                              SOUTH FLORIDA GRADING, INC.


DATE: _____       Signature: _____
                              TIMOTHY REYNOLDS

4